IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

KEVIN A. REYNOLDS                                                      PLAINTIFF

v.                                                  CIVIL ACTION NO. 1:16-cv-285-JCG

ANTHONY BEASLEY *in his Official*
*and Individual Capacities*                                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

BEFORE THE COURT is the Motion for Summary Judgment (ECF No. 25) filed by Defendant Anthony Beasley, with an accompanying Memorandum. Plaintiff Kevin A. Reynolds filed a Response in Opposition (ECF No. 28) and a supporting Memorandum (ECF No. 29). Following Plaintiff's Response, the Court ordered additional briefing and allowed for Plaintiff to file a sur-reply. *See* (ECF No. 34); (ECF No. 36). Beasley accordingly filed a Reply (ECF No. 35) and Plaintiff filed a Sur-Reply (ECF No. 37). Having considered the submissions of the parties and relevant law, the Court concludes that Defendant's Motion for Summary Judgment (ECF No. 25) will be GRANTED. Plaintiff's claims will be dismissed with prejudice.

## I. BACKGROUND

A. Procedural History and Plaintiff's Allegations

Plaintiff Kevin A. Reynolds is an inmate in the custody of the Mississippi Department of Corrections ("MDOC") housed at South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi. Plaintiff filed his Complaint (ECF No. 1) on August 4, 2016, naming Anthony Beasley as the sole defendant and seeking declaratory and injunctive relief and monetary damages pursuant to 42

U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 114 Stat. 803, 42 U.S.C. § 2000cc *et seq*. (ECF No. 1, at 1); (ECF No. 16, at 6). Plaintiff proceeds *pro se* and *in forma pauperis*.

On January 3, 2017, the Court held an omnibus hearing,[1] during which Plaintiff supplemented and clarified the allegations in his Complaint and the Court set case management deadlines. *See* Minute Entry Jan. 3, 2017. The parties also consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 73. (ECF No. 22).

Plaintiff states that he is a practicing Muslim. (ECF No. 1, at 2). He alleges that on April 1, 2016, Defendant Beasley – a captain at SMCI – "intentionally" denied Plaintiff the opportunity to attend the Jumah service scheduled for 12:30 PM. *Id.* at 2-5. Plaintiff, who was housed in SMCI Area II, B-1, A-Zone at the time, says Beasley told him that he could not attend the service because Area II of the facility was presently locked down. *Id.* However, Plaintiff asserts that this could not have been true because Christians housed in Area II were allowed to attend their worship service later that same day.[2] *Id.* Plaintiff invokes RLUIPA and the Equal Protection Clause of the Fourteenth Amendment, but the Court also liberally construes his allegations to invoke the Free Exercise Clause of the First

---

[1] The omnibus hearing functioned as both a screening hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), and an in-person case management conference.

[2] Although Plaintiff initially asserted in his Complaint that Christians went to their service at "the same date and time" that Plaintiff was prohibited from attending his Islamic service, *see* (ECF No. 1, at 4), he testified at his omnibus hearing and stated in subsequent filings that, in fact, the Christian service occurred in the evening later that day. *See* (ECF No. 28, at 2); (ECF No. 37, at 2).

2

Amendment. On March 9, 2017, Defendant filed the instant Motion for Summary Judgment (ECF No. 25).

B. <u>Submitted Evidence</u>

Defendant Beasley submitted a sworn affidavit in support of the instant Motion for Summary Judgment. Beasley states that he is a correctional officer at SMCI and holds the rank of Captain. (ECF No. 35, at 1). He states that Plaintiff was housed at SMCI, Area II on April 1, 2016 and that Area II was on lockdown on that date. *Id.* Although he does "not specifically recall this particular day," the Location Log and Watch Commander Log for Area II on April 1, 2016 "reflect that Jumah offenders were escorted to housing unit C-2 for religious services at 12:25 p.m. that day." *Id.* Beasley attests that these logs – which are also submitted with the Motion, *see* (ECF No. 35-1, at 2-13) – are "authentic," and Beasley has "no reason to suspect that they are inaccurate." (ECF No. 35-1, at 1).

The Location Log for SMCI Area II reflects an entry at 12:25 p.m. on April 1, 2016 by Tammie T Jackson, stating "Jumah offenders exits housing units enroute to housing unit Charlie 2 for services." *Id.* at 6 (all sic in original). The Watch Commander Log dated April 1, 2016 contains an entry at 12.25 hours that also states, "Jumha offenders exits housing units enroute to unit Charlie-2 for services." *Id.* at 11 (all sic in original). These logs make no mention of inmates attending a Christian religious service between 5:50 a.m. and 6:30 p.m. on April 1, 2016.

Attached to Plaintiff's Complaint are four unsworn declarations of fellow inmates at SMCI. Romeo Miller #44770, affirms that, on April 1, 2016, he heard

3

Beasley tell Plaintiff "that we could not attend 'Jumah' religious service at 12:30 of said date, because Area-2, B-1, A-zone was on lock-down." (ECF No. 1-2, at 4). Mr. Miller states that "the Christian Worshippers in the same building on the same zone were allowed to attend their worship service." *Id.* Dontral Smith #35337, Sims Cox #106780, and Rufus McFaddden #104303 also make declarations that are nearly identical in content to Mr. Miller's statement. *Id.* at 5-7.

Plaintiff also submitted his First Step Response and Second Step Response from the MDOC Administrative Remedy Program. The First Step Response, signed by Warden Marshal Turner, advises Plaintiff that his "rights and services will not be hindered unless there is a legitimate reason." (ECF No. 1-2, at 2). The Second Step Response, signed by Superintendent Jacqueline Banks, explains,

> The staff is fully aware of inmate rights in regards to religious services and they are not arbitrarily delayed or cancelled. However, due to the fact they are held in a prison setting there are times when security concerns dictate they be suspended. When this is done, it is deemed necessary and done in compliance with MDOC policy.

*Id.* at 1).

## II. DISCUSSION

Defendant Beasley's Motion for Summary Judgment (ECF No. 25) argues that Plaintiff has failed to assert facts amounting to a constitutional violation and, alternatively, that the undisputed material facts demonstrate that Plaintiff's constitutional rights were not violated by Beasley.[3] (ECF No. 26, at 4-6); (ECF No.

---

[3] Defendant does not address Plaintiff's claims under RLUIPA, but the Court will *sua sponte* address these allegations because (1) the same operative facts are at issue regardless of the applicable law

35, at 1-2). Accordingly, Defendant seeks an order of summary judgment in his favor. (ECF No. 26, at 6). Plaintiff maintains that Beasley denied him the opportunity to partake in the Jumah service and, in doing so, acted arbitrarily and discriminatorily. He argues that the material facts regarding Defendant's alleged violation of Plaintiff's constitutional rights (and, presumably, violation of Plaintiff's rights under RLUIPA) are in dispute, precluding summary judgment.

A. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is

---

and (2) Plaintiff's claims are subject to screening under 28 U.S.C. 1915A. Plaintiff only mentions RLUIPA in his Response in Opposition to Defendant's Answer (ECF No. 16, at 6).

appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

B. <u>The Prison Litigation Reform Act</u>

Because Plaintiff is a prisoner seeking redress from government employees through a civil action, the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321, H.R. 3019 (codified as amended in scattered titles and sections of the United States Code), applies and requires that this case be screened.

The PLRA provides that "the Court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see* 28 U.S.C. § 1915(e)(2)(B). Accordingly, the statute "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

C. <u>Analysis</u>

Plaintiff and Defendant dispute whether Plaintiff was, in fact, prohibited from attending his religious service on April 1, 2016, and they have each submitted

6

competent summary judgment evidence in support of their position. However, the Court does not find that the potential conflict in the evidence creates a material issue of fact. The logs submitted by Beasley indicate that Muslim inmates in Area II were escorted to their service at 12:25 p.m. on April 1, 2016. They need not suggest that Beasley did not tell Plaintiff that he could not attend the service. Because Plaintiff does not allege that any other Muslim inmates were prohibited from attending the Jumah service, the Court does not find that this evidence creates a material issue of fact. Accordingly, the record is ripe for summary judgment. For the following reasons, the Court concludes that Defendant Beasley's Motion for Summary Judgment (ECF No. 25) should be granted and Plaintiff's claims should be dismissed with prejudice.

i. Sovereign Immunity Prevents Plaintiff's Recovery of Monetary Damages from Beasley, in his Official Capacity

"The Eleventh Amendment bars citizens of a state from suing their own state or another state in federal court unless the state has waived its sovereign immunity or Congress has explicitly abrogated it." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citing U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1, 11 (1890); *Ysleta del Sur Pueblo v. Texas*, 36 F.3d 1325, 1335 (5th Cir. 1994)). "The Eleventh Amendment also 'generally precludes actions against state officers in their official capacities." *Salinas v. Tex. Workforce Comm'n*, 573 F. App'x 370, 372 (5th Cir. 2014) (quoting *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004)). This is because "a suit against a state official in his or her official capacity … is no different from a suit against the State itself." *Will v. Mich. Dep't of State*

7

*Police*, 491 U.S. 58, 71 (1989). However, an exception to this general rule has been carved out for suits against state officers in their official capacity that seek injunctive relief for violations of federal law. *Id.* n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Ex Parte Young*, 209 U.S. 123 (1908)).

Congress has not abrogated state sovereign immunity under 42 U.S.C. § 1983. *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 339-40 (1979); *Richardson v. S. Univ.*, 118 F.3d 450, 453 (5th Cir. 1997)). And the same is true for RLUIPA – the statute does not abrogate state sovereign immunity. *Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011). The State of Mississippi has not waived sovereign immunity for lawsuits filed in federal court. *See* Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). Accordingly, there is no basis for waiver or abrogation of sovereign immunity under Plaintiff's claims. Because Beasley is an employee of MDOC – which is an arm of the State of Mississippi, *Reeves v. King*, No 1:13-cv-492-KS-MTP, 2015 WL 461685, at *3-4 (S.D. Miss. Feb. 4, 2015) – he is a state official. The Eleventh Amendment thus precludes Plaintiff from recovering monetary damages against Beasley in his official capacity.

 ii.  <u>The PLRA Prevents Plaintiff's Recovery of Compensatory Damages from Beasley in his Individual Capacity</u>

The PLRA provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the

8

commission of a sexual act." 28 U.S.C. § 1997e(e). This statutory provision "prevents prisoners from seeking compensatory damages for violations of federal law where no physical injury is alleged." *Mayfield v. Tex. Dep't Of Criminal Justice*, 529 F.3d 599, 605 (5th Cir. 2008). "Despite the limitations imposed by § 1997e(e), [the Fifth Circuit has] recognized that a prisoner can, absent a showing of physical injury, pursue punitive or nominal damages based upon a violation of his constitutional rights." *Id*. In the instant case, Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, and punitive damages. *See* (ECF No. 1, at 6). The PLRA bars his recovery of compensatory damages because Plaintiff alleges no physical injury.

The Court turns next to the merits of each of Plaintiff's claims.

iii. <u>Plaintiff has Failed to State a Claim for Relief Under RLUIPA</u>

Under RLUIPA:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Thus, the first question in assessing challenged government action under RLUIPA is whether the action "substantially burdens" the plaintiff's "religious exercise." *Mayfield v. Texas Dep't Of Criminal Justice*, 529 F.3d 599, 613 (5th Cir. 2008). Plaintiff's burdened activity – attending a Jumah service – is a

religious exercise. However, the Court does not find that Plaintiff's allegations establish that his religious exercise was substantially burdened.

RLUIPA does not, itself, define what constitutes a substantial burden, but the Fifth Circuit has done so:

> [A] government action or regulation creates a "substantial burden" on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs .... [T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs.

*Id.* (quoting *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004)). The Fifth Circuit further instructs that application of this definition "requires a case-by-case, fact-specific inquiry to determine whether the government action or regulation in question imposes a substantial burden." *Id.* (quoting *Adkins*, 393 F.3d at 571).

Plaintiff alleges that Beasley prohibited him from attending a single religious service on a single occasion. Plaintiff does not allege that this instance pressured him to modify his religious behavior or forced him to choose between following his religious beliefs and enjoying a non-trivial benefit. He does not allege that he had previously been prohibited from attending the Jumah service, and he does not allege that he has since been prohibited from doing so. Indeed, Plaintiff does not allege that he has been otherwise limited in his ability to exercise the Islamic faith. Plaintiff merely alleges that Beasley told him he could not attend the 12:30 p.m. Jumah service on April 1, 2016. The Court concludes that this singular action did

not substantially burden Plaintiff's religious exercise. *Cf. Adkins*, 393 F.3d at 571 (holding that a prison policy requiring an outside volunteer to be present at group religious meetings did not substantially burden the religious exercise of a prisoner member of the Yahweh Evangelical Assembly because the prisoner had access to religious materials and the prison was not responsible for the dearth of qualified outside volunteers in Coffield, Texas). Therefore, Plaintiff has failed to state a claim under RLUIPA.

> iv. <u>Defendant Beasley did not Violate Plaintiff's First Amendment Right to Free Exercise of Religion</u>

"Lawful incarceration inherently involves the limitation of many privileges and rights, but prisoners still benefit from some constitutional protections, including the First Amendment directive that no law shall prohibit the free exercise of religion." *Butts v. Martin*, 877 F.3d 571, 584 (5th Cir. 2017). "The Constitution requires that 'reasonable opportunities must be afforded to all prisoners to exercise ... religious freedom.'" *Green v. McKaskle*, 788 F.2d 1116, 1126 (5th Cir. 1986) (quoting *Cruz v. Beto,* 405 U.S. 319, 322 n.2 (1972)). Whether a prison authority's action impermissibly encroaches upon a prisoner's First Amendment rights depends on whether the action is "reasonably related to legitimate penological interests." *Butts*, 877 F.3d at 584; *Adkins*, 393 F.3d at 566; *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989).

The Supreme Court has enumerated four factors for courts to consider in assessing whether a prison authority's action that burdens a prisoner's constitutional rights is reasonably related to a legitimate penological interest:

11

> (1) [W]hether a "valid, rational connection [exists] between the prison [authority's action] and the legitimate governmental interest put forward to justify it," (2) whether there exist "alternative means of exercising the fundamental right that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there is an "absence of ready alternatives" to the [action] in question.

*Adkins*, 393 F.3d at 564 (quoting *Turner v. Safley*, 482 U.S. 78, 89-90 (1987)).

"Courts are not, however, required 'to weigh evenly, or even consider, each of these factors.' 'Factor one' is 'controlling'; 'the other factors merely help a court determine if the connection *is* logical.'" *Fluker v. King*, 679 F. App'x 325, 330 (5th Cir. 2017) (quoting *Scott v. Miss. Dep't of Corrs.*, 961 F.2d 77, 80-81 (5th Cir. 1992)). "Ultimately, 'the government objective must be a legitimate and neutral one.'" *Butts*, 877 F.3d at 585 (citations omitted).

The undisputed record reflects that SMCI Area II was on lockdown on April 1, 2016. It also reflects that inmates on Area II were escorted to the Jumah service on that date at 12:30 p.m. despite the lockdown. However, Defendant Beasley told Plaintiff – a practicing Muslim – that he could not go to that Jumah service because Area II was on lockdown.[4] Later, the same day, in the evening, Area II inmates attended a Christian service.

---

[4] Defendant Beasley argues that Plaintiff's claim that Beasley prevented him from attending the Jumah service is belied by evidence that Area II inmates were escorted to Jumah service on April 1, 2016; however, Plaintiff has supported competent summary judgment evidence, in the form of sworn statements from Plaintiff and the unsworn declarations of four other inmates, to refute such a conclusion. The Court cannot weigh the evidence in deciding a motion for summary judgment.

Plaintiff maintains that Beasley's action – informing Plaintiff that he could not attend the Jumah service – was motivated by discriminatory animus against Muslim inmates. Plaintiff argues that Beasley's purported justification – the lockdown status of Area II – could not have been true because Christian inmates attended their service later the same day. Plaintiff would have the Court conclude that Beasley therefore must have intended to discriminate against him because of his Muslim faith.

Beasley's alleged religion-based animus, however, turns out to be nothing more than a bald, conclusory allegation; it is unsupported by the record. The record indicates that Area II was on lockdown on April 1, 2016. The fact that other inmates in Area II nonetheless attended both the Jumah service and a Christian service later that evening suggests either that Beasley was mistaken about the lockdown preventing Jumah attendance or that the lockdown prevented some inmates, but not all, from attending the Jumah service.

During a lockdown, prisoner movement within the prison is restricted. The purpose of locking down a portion or the whole of a prison is to ensure the safety and security of inmates and prison personnel. And the internal security of detention facilities is a legitimate governmental interest. *Fluker*, 679 F. App'x at 331 (citing *Block v. Rutherford*, 468 U.S. 576, 586 & n.8 (1984)). The evidence does not suggest that Beasley either lied about the existence of a lockdown or enforced the lockdown in a discriminatory (non-neutral) way.

Insofar as the remaining factors are concerned, and as already discussed by the Court, Plaintiff asserts no further limitation on his ability to exercise his Islamic faith. He does not assert that he was restricted from keeping religious texts or praying on his own, and he does not assert that he was prevented from attending any Muslim services before or since the single instance on April 1, 2016. Alternative means existed for Plaintiff to exercise his faith; he does not allege that his religious rights have been otherwise limited. Accordingly, the Court concludes that Beasley's action was rationally related to a legitimate, neutral penological interest, and, therefore, not a violation of Plaintiff's First Amendment right to free exercise of religion. *See Clifton v. Lappin*, No. 10-cv-1243, 2010 WL 4136150, at *5-6 (W.D. La. Oct. 4, 2010), *report and recommendation adopted*, No. 10-cv-1243, 2010 WL 4168271 (W.D. La. Oct. 18, 2010) (holding that prohibiting prisoners from attending religious services while the prison was locked down constitutes a legitimate penological interest); see also Omran v. Metrejean, 643 F. App'x 339, 340 (5th Cir. 2016) ("A prisoner's constitutional right to freely exercise his religion is not violated by the occasional inability to practice."); *Williams v. Bragg*, 537 F. App'x 468 (5th Cir. 2013) (holding that the occasional cancellation of Muslim services did not violate a prisoner's First Amendment rights); *Green v. McKaskle*, 788 F.2d 1116, 1126 (5th Cir. 1986) (holding that a prison's occasional inability to assist a prisoner in attending a Baptist church service did not violate the prisoner's religious freedom rights).

v. <u>Defendant Beasley did not Violate Plaintiff's Fourteenth Amendment Right to Equal Protection Under the Law</u>

"To succeed on his equal protection claim, [Plaintiff] 'must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated.'" *Adkins*, 393 F.2d at 566 (quoting Muhammad v. Lynaugh, 966 F.2d 901, 903 (5th Cir. 1992)). "However, the Fourteenth Amendment does not demand 'that every religious sect or group within a prison – however few in numbers – must have identical facilities or personnel.'" *Id.* (citations omitted). *Turner* also applies to equal protection claims. *Id.*; *see Turner*, 482 U.S. 78.

The Court has already concluded that *Turner* is satisfied in this case – Beasley articulated a legitimate, neutral penological interest in support of his action instructing Plaintiff that he could not attend the Jumah service at 12:30 p.m. on April 1, 2016. However, the Court would also note that Plaintiff's Fourteenth Amendment claim fails for additional reasons. First, Plaintiff cannot prove purposeful discrimination; Plaintiff's allegations of discriminatory intent are belied by evidence in the record. Second, Plaintiff maintains that the basis for the different treatment he received was his Muslim faith. But among inmates similarly situated in Area II, Muslims and Christians were both allowed to attend their respective services on April 1, 2016. Plaintiff was apparently the only inmate (or one of few inmates) prevented from attending his religious service that day. Plaintiff's allegations do not articulate a "class of one" theory of discrimination, and such a theory is unsupported by the undisputed facts in the record.

15

## III. CONCLUSION

Based on the foregoing, the Court finds that Defendant Beasley, in his official capacity, is entitled to sovereign immunity against Plaintiff's claims for monetary damages. The PLRA also prohibits Plaintiff from recovering compensatory damages from Beasley in his individual capacity. Furthermore, the competent summary judgment evidence in the record demonstrates that Beasley did not violate Plaintiff's rights under RLUIPA, the First Amendment, or the Fourteenth Amendment. Plaintiff's claims under 42 U.S.C. § 1983 must therefore be dismissed with prejudice.

Additionally, because the Court finds the undisputed record to be conclusive as to Plaintiff's claims, the Court will deny Plaintiff's subsequently filed Motion for Discovery (ECF No. 31). The Court would also note that the Motion for Discovery (ECF No. 31) requests discovery material he was previously provided at the conclusion of the omnibus hearing and otherwise requests material that is irrelevant to Plaintiff's claims.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Anthony Beasley's Motion for Summary Judgment (ECF No. 25) is **GRANTED**. Plaintiff Kevin Reynolds' claims against Defendant Anthony Beasley are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Discovery (ECF No. 31) is **DENIED** as moot.

**SO ORDERED AND ADJUDGED,** this the 23rd day of March, 2018.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE